## PACIFIC LIVE STOCK CO. v. WARM SPRINGS IRR. DIST.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1921.)

No. 3512.

1. **Eminent domain ⬦191(6), 241—Complaint need not allege nature of estate sought to be acquired, and judgment need not specify estate acquired.**

   Under Or. L. § 7099, providing that the complaint in a suit to condemn land shall describe the land, right, or easement sought to be appropriated, and section 7103, providing that the court shall give judgment appropriating the land, rights, property, easement, etc., the complaint need not allege whether plaintiff seeks to acquire a fee-simple title or an easement. and the judgment need not specify the nature of the estate acquired.

2. **Eminent domain ⬦262(5)—In condemnation suit refusal to have complaint or judgment specify nature of estate held not injurious.**

   In a condemnation suit, if the refusal to require the complaint to allege the nature of the estate sought to be acquired or the failure of the judgment to specify the nature of the estate was erroneous, the error was not injurious to defendant, where it brought another suit to have the nature of the estate determined in which the court held, as contended by it, that plaintiff acquired only an easement.

3. **Evidence ⬦546—Qualification of experts as to value held a question for the court.**

   In a suit to condemn part of a ranch detached from other like properties, the qualifications of witnesses concerning the value of the property *held* a question for the court, though the witnesses lived over 100 miles from the land and never saw it until they examined it for the purpose of forming a judgment as to its value.

4. **Evidence ⬦543(3)—Witnesses living at some distance from land not necessarily disqualified to testify as to value.**

   That expert witnesses lived at a distance of 100 miles or more from land sought to be condemned did not necessarily disqualify them to express opinions as to its value.

5. **Eminent domain ⬦262(5)—Testimony on direct examination as to sales of other property not reversible error.**

   In a condemnation suit it is not reversible error to permit witnesses to testify on direct examination respecting their knowledge of other sales of like property.

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Eminent domain** ☞205—Damages on account of removal of hay stacked on property condemned held too conjectural under the evidence.

Where the owner of land sought to be condemned had 1,000 tons of hay stacked thereon, and there was evidence that the cost of moving it would be from $5 to $10 a ton, and that it would be necessary to construct a field, fences, and accommodations for the men engaged in feeding cattle at the place to which it was moved at an expense of $7,500, but other testimony that the hay could be advantageously fed where it was before it would be necessary to remove it, damages on account of the hay *held* too conjectural and uncertain for recovery.

7. **Eminent domain** ☞205—Court not bound to accept estimates of value of engineers.

In a condemnation suit, the court was not bound to accept the valuation placed on the property for reservoir purposes for an irrigation project by engineers.

8. **Eminent domain** ☞262 (4)—Finding on conflicting evidence as to damages from condemnation not assignable as error.

Where there was evidence that portions of defendant's ranch which would be isolated by the condemnation of part of the ranch would be decreased in value and other evidence that there would be no decrease, a finding that such lands had not been damaged was not assignable as error.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suit by the Warm Springs Irrigation District against the Pacific Live Stock Company to condemn property. Judgment fixing the value of the property at an insufficient amount, and defendant brings error. Affirmed.

John L. Rand, of Baker, Or., P. J. Gallagher and W. H. Brooke, both of Ontario, Or., and Edward F. Treadwell, of San Francisco, Cal., for plaintiff in error.

Ed. R. Coulter, of Weiser, Idaho, H. C. Eastham, of Vale, Or., and Allen H. McCurtain, and Thomas G. Greene, both of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. The parties hereto will be named plaintiff and defendant as in the court below. The Warm Springs irrigation district brought an action to condemn, for use as a reservoir site, a portion of the ranch owned by the defendant, known as the Warm Springs ranch. The plaintiff alleged the making of surveys, the location of a dam site and reservoir at a point 1,400 feet south of the south line of the defendant's property, the organization of the plaintiff as an irrigation district, and its intention to irrigate 30,000 acres or more of land. It alleged the offer to the defendant of $55,-000 for the 2,500 acres which it sought to appropriate and the offer of the defendant to accept $143,000 and their inability to agree. Upon the evidence the court below fixed the value of the property at $90,000, and awarded the defendant $5,000 as attorney's fees.

[1, 2] Error is assigned to the denial of the defendant's motion that the complaint be made more definite and certain so as to show whether the plaintiff sought to acquire the fee-simple title to the land described in the complaint, or an easement therein, and error is also

assigned to the entry of the judgment in the cause for its omission to specify whether the plaintiff acquired thereby the fee-simple title or an easement. We find no error in either assignment. The Oregon statute (Olson's Oregon Laws, § 7099) declares that the complaint in such a case "shall describe the land, right, or easement sought to be appropriated with convenient certainty," and in section 7103 it is provided:

"Upon the payment into court of the damages assessed by the jury, the court shall give judgment appropriating the lands, property, rights, easement, crossing or connection in question, as the case may be, to the corporation, and thereafter the same shall be the property of such corporation."

The court below ruled that—

"It is not necessary, nor do I deem it proper, to determine at this time whether such appropriation will amount to the taking of the fee or only an easement. The judgment will follow the language of the statute appropriating the property for reservoir purposes. The legal effect can be determined when the question arises, if it ever does."

In 20 C. J. 947, it is said:

"Where the statute provides what shall be set out in the petition, nothing more need be alleged."

And in 20 C. J. 857, it is said:

"The interest which the petitioner seeks to acquire, whether as easement or a fee, need not be stated."

Among the cases so holding are Dexter & N. R. Co. v. Foster, 64 Misc. Rep. 500, 119 N. Y. Supp. 731, and In re Metropolitan El. Ry. Co. (Sup.) 12 N. Y. Supp. 506. But, if there was error in said rulings, it resulted in no injury to the defendant, for in a subsequent suit between the parties brought to determine the nature of the estate so condemned, the court below held that the right acquired by the plaintiff was but an easement, and that decision has been affirmed by this court in Warm Springs Irrigation District et al. v. Pacific Live Stock Co. (C. C. A.) 270 Fed. 560.

[3, 4] It is contended that the witnesses Hunt, Greig, and Weaver, who testified for the plaintiff as to the value of the property in question, were not qualified to give evidence on that question, and that it was error to admit their testimony. The land a portion of which was sought to be condemned was operated as a cattle ranch. It was a tract of about 5 miles in length and varying in width from one-quarter of a mile to more than a mile lying along the middle fork of the Malheur river in Malheur and Harney counties. The defendant had owned it 25 years. It was not a simple matter to obtain satisfactory evidence of its value detached as it was from other like properties situate at considerable distances apart on streams in Central and Western Oregon. The three witnesses so named had not seen the defendant's ranch, nor were they acquainted with its value before they went there in December, 1918, and spent 2 days thereon examining the same for the purpose of acquiring knowledge and forming a judgment as to its value. This they did at the instance of the plaintiff. In November, 1919, they again spent a day upon the ranch for the same

purpose. Hunt lived in Malheur county at a distance of 116 miles from the land in question. He had lived there 19 years. His occupation was farming. He had had experience in farming irrigated lands. He had handled stock on a hay ranch. Weaver also lived in Malheur county; had lived there the most of the time since 1883. He owned land on Willow creek. He had bought and sold land in Malheur county, and had raised cattle on such lands, and he had run cattle on the range. Greig also lived in Malheur county. He was engaged in operating three ranches, and at times he did "a little real estate business," and since 1905 he had been in the land business, buying and selling land for himself and associates, and in the irrigation business, all generally in the eastern part of Malheur county. The mere fact that these witnesses lived at a distance of 100 miles or more from the land in controversy does not necessarily disqualify them, and aside from that fact there is nothing in the evidence to show that they lacked full qualification to testify as witnesses to the value of the land in question. It was for the court below to determine whether they were qualified to testify. In Stillwell Mfg. Co. v. Phelps Railroad Co., 130 U. S. 520, 527, 9 Sup. Ct. 601, 603 (32 L. Ed. 1035), Mr. Justice Gray said:

"Whether a witness called to testify to any matter of opinion has such qualifications and knowledge as to make his testimony admissible is a preliminary question for the judge presiding at the trial; and his decision of it is conclusive, unless clearly shown to be erroneous in matter of law."

And in Montana Railway Co. v. Warren, 137 U. S. 348, 353, 11 Sup. Ct. 96, 97 (34 L. Ed. 681) Mr. Justice Brewer said:

"It is difficult to lay down any exact rule in respect to the amount of knowledge a witness must possess; and the determination of this matter rests largely in the discretion of the trial judge."

That rule was followed by this court in Union Pac. Ry. Co. v. Novak, 61 Fed. 573, 580, 9 C. C. A. 629. In 10 R. C. L. 218, it is said:

"Opinion evidence is also usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values, and are more able to form an opinion on the subject at issue than citizens generally. This rule is liberally applied in the case of farm lands, as other evidence is often not easily obtained. A neighboring farmer will be able to judge value with reasonable accuracy if acquainted with the physical surroundings and the character of the soil"

—citing Montana Railway Co. v. Warren, supra, where Mr. Justice Brewer, in speaking of objections similar to those which are here urged, said:

"It has often been held that farmers living in the vicinity of a farm whose value is in question may testify as to its value, although no sales have been made to their knowledge of that or similar property. Indeed, if the rule were as stringent as contended, no value could be established in a community until there had been sales of the property in question, or similar property. * * * It is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinions it has confidence."

[5] We are not convinced that it was reversible error to permit certain witnesses for the plaintiff to testify on their direct examination respecting their knowledge of other sales of like property. Some courts have ruled otherwise for the reason of the tendency of such a practice to inject side issues into the case. But the weight of authority is that the admission of such testimony on the direct examination is not ground for reversing the judgment, and this court has so held in Lynch v. United States, 138 Fed. 535, 71 C. C. A. 59. See, also, 10 R. C. L. 221; 22 C. J. 590; C. & W. I. R. R. Co. v. Heidenrich, 254 Ill. 231, 98 N. E. 567, Ann. Cas. 1913C. 266; St. L., K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 25 S. W. 192, 906, 26 L. R. A. 751; and Manda v. Orange, 82 N. J. Law, 686, 82 Atl. 869, Ann. Cas. 1913D, 581.

[6] The defendant by its amended answer alleged that for the purpose of feeding its live stock during the winter of 1919–20 it had 1,000 tons of hay which had been cut and stacked upon the premises sought to be condemned; that in order to preserve said hay from anticipated flooding by the reservoir the defendant would be required to remove the same a distance of three miles to a point where in order to feed the same it would be necessary to construct a field for the purpose of separating and classifying the cattle to be fed, and to construct fences and proper accommodations for the men engaged in the feeding, all of which would entail an expense of $7,500. The court below, in denying this item of damages, said:

"I have not included the hay now on the property. It is not sought to be condemned. It is personal property and will be no more affected by the judgment in this case than any other personal property belonging to the defendant now on the ranch."

There was evidence that the hay, if it could be used where it was, was worth $18 a ton, and that to move it would cost sums variously estimated at from $5 to $10 a ton. On the other hand, there was testimony tending to show that the hay could be advantageously fed where it was, before the necessity of removing it should arise. It is the general rule that expenses arising from the removal of property which is necessitated by the appropriation of land does not constitute an element of the damages to be allowed. 20 C. J. 782; C. P. R. R. Co. v. Pearson, 35 Cal. 247; New York, etc., Railroad v. Blackner, 178 Mass. 386, 59 N. E. 1020; Becker v. Phila. & Reading R. Co., 177 Pa. 252, 35 Atl. 617, 35 L. R. A. 583; Railroad v. Schweitzer, 173 Mo. App. 650, 158 S. W. 1058; St. L., K. & N. W. Ry. Co. v. Knapp, Stout & Co., 160 Mo. 396, 61 S. W. 300. We do not assert that the rule so stated is a hard and fast one. There may be circumstances under which the expense of removing personal property from land which is sought to be condemned is a legitimate item of damages. But the damages here sought to be recovered on account of the hay were too conjectural and uncertain to form the basis of recovery at the time of the judgment of condemnation.

[7] It is contended that the court below erred in denying the defendant the full value of its ranch based on the adaptability thereof to use as a reservoir site; the testimony being undisputed that the value

of the property for that purpose was $250,000. The court in fixing the defendant's compensation at $90,000 took into consideration the property as a whole, the improvements, the relation of the several parts to each other, its location, situation, character, and adaptability to the various uses to which it could be put. It is true that two engineers estimated the value of the property for reservoir purposes for an irrigation project to be $250,000. But the court was not bound to accept that valuation. 20 C. J. 992; City of Kansas v. Butterfield, 89 Mo. 646, 1 S. W. 831; McReynolds v. B. & O. R. Co., 106 Ill. 152; Beveridge v. Lewis, 137 Cal. 619, 67 Pac. 1040, 70 Pac. 1083, 59 L. R. A. 581, 92 Am. St. Rep. 188.

[8] It is said that it was error to deny the defendant damages which would be caused by the separation of the ranch from 1,000 acres of isolated tracts situated from 2 to 4 miles therefrom. To this it is to be said that, while there was evidence tending to show that those outlying tracts would be decreased in value from one-third to one-half, there was testimony, on the other hand, that they would not be rendered less valuable. The court below said:

"In my judgment such lands will not be specially damaged nor injured by the taking."

That finding, supported as it is by competent evidence, is not assignable as error.

We find no error. The judgment is affirmed.